UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 15-1304 DSF (MANx) | Date | 11/12/15 |
| Title | Susan Rush v. Santa Monica Police Officer Robert Fujita, et al. | | |

Present: The Honorable DALE S. FISCHER, United States District Judge

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order Denying Defendants' Motion for Summary Judgment (Dkt. 30)

This case stems from a confrontation between Plaintiff Susan Rush and two Santa Monica Police Department officers, who were interviewing a group of teenage boys about vandalism. Plaintiff came upon the police interviews in progress, thought she knew one of the teens, and approached them, asking if they had been allowed to call their parents. This sparked a confrontation that resulted in Plaintiff's arrest. The criminal case was eventually dismissed, and this litigation followed. Defendants City of Santa Monica, Officer Robert Fujita, and Officer Lizette Lopez move for summary judgment on two of Plaintiff's claims.[1] The motion is denied.

## I. LEGAL STANDARD

---

[1] The parties have stipulated to dismissal of Plaintiff's Monell allegations, Fourteenth Amendment allegations, and malicious prosecution claim. See Defs.' Mot. Exhibit A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(c)(1).

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Rather, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (internal quotation marks and ellipsis omitted).

## II. UNDISPUTED FACTS

On March 29, 2014, Lopez was interviewing four youths as part of a vandalism investigation. Statement of Undisputed Facts (SUF) 1-2. Fujita came to the scene to assist with the investigation, but by the time he arrived, Lopez had already decided to take the boys' information and let them go. SUF 6-7.

Lopez was completing field interview cards for the teens, who were sitting on a curb, when Plaintiff approached them. SUF 3-4, 12. Although Plaintiff's proximity to Lopez is in dispute, the parties agree that Plaintiff initially sat or crouched near one of the boys. SUF 5. She asked him if he was able to call his mother. SUF 14-15. Plaintiff does not recall if either officer said anything to her after she asked the question, but she was the only one speaking at the time. SUF 18-19. Plaintiff then asked the officers, "What's happening?" SUF 20-21. Fujita said something, but Plaintiff does not recall what. SUF 21. Plaintiff approached him with her phone and asked for his name. SUF 23, 102. Fujita asked whether her phone was a weapon and whether she was filming him. SUF 25. He took the phone from her hand and walked away. SUF 26.

During this encounter, Lopez was on the far end of where the boys were sitting on the curb. SUF 24. Plaintiff told Lopez that Fujita had taken her phone. SUF 28. Lopez

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

responded, "He took your phone?" SUF 28. Lopez then received a call and said the boys were free to go. SUF 29-32, 34.

Fujita came back toward the group from around the corner. SUF 37. At that point, Plaintiff claims he attacked her. SUF 38. The officers say Fujita was attempting to place her in custody but Plaintiff refused to comply with commands and was flailing. SUF 117; Lopez Depo. 44:15-45:3. Plaintiff was taken to the ground. SUF 39, 40, 105. Initially, Lopez was at least eight feet away from Plaintiff, but seeing the struggle with Fujita, she assisted in the arrest by placing a knee on Plaintiff's thigh and trying to grab one of Plaintiff's arms. Pl.'s Depo. 74:23; SUF 109-110. Once cuffed, Plaintiff yelled, "I can't breathe," "you're breaking my arm," "he's killing me," and "someone, please help me." SUF 106. The whole incident lasted only a couple of minutes. See SUF 122.[2]

Plaintiff was arrested and transported to the Santa Monica jail on suspicion of obstructing a police officer. SUF 119; Pl.'s Ex. K. The criminal case was dismissed months later, and her phone was returned. SUF 120.

### III. DISCUSSION

Plaintiff filed numerous federal and state civil rights claims against Defendants, but on summary judgment, only the Bane Civil Rights claim against Fujita and the failure to intervene claim against Lopez are at issue.

**A. Bane Act (Cal. Civ. Code § 52.1)**

An individual may sue under California law when an officer, acting under color of law, interferes by threat, intimidation, or coercion, with the exercise of his or her constitutional rights. Cal. Civ. Code § 52.1. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., threats, intimidation or coercion), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do

---

[2] Sixty-seven seconds passed between the time that Plaintiff passed in front of the patrol car dashboard camera and the first time Plaintiff is heard yelling. SUF 122. The arrest is not visible on camera, but audio was recorded. See Pl.'s Exhibit K. Defendants dispute that the yell marks the beginning of the arrest, see Defs.' Reply at 6:6-8, but based on the audio, Plaintiff was in custody less than three minutes after she approached. See Pl.'s Exhibit K.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

under the law." Shoyoye v. Cnty. of Los Angeles, 203 Cal. App. 4th 947, 955-56 (2012) (internal punctuation omitted). "The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. While an individual's critical comments may be provocative and challenging, they are nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest." Ford v. City of Yakima, 706 F.3d 1188, 1192-93 (9th Cir. 2013) (per curiam) (internal punctuation and citations omitted).

To demonstrate retaliation in violation of the First Amendment, a plaintiff must show that the officer's actions "would chill or silence a person of ordinary firmness from future First Amendment activities" and that the actions were motivated by a desire to cause the chilling effect. Skoog v. Cnty. of Clackamas, 469 F.3d 1221, 1231-32 (9th Cir. 2006); see also Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999) (concluding proper test is whether person of ordinary firmness would be deterred because it would be unjust to allow defendant to escape liability "merely because an unusually determined plaintiff persists in his protected activity"). A claim survives summary judgment when there is weak evidence of probable cause and strong circumstantial evidence of a retaliatory motive. See Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 901 (9th Cir. 2008) (holding inference of retaliation must be stronger than that arising from previous negative interactions between the plaintiff and officer).

Defendants argue that in this case, there is no causal connection between Plaintiff's speech and her arrest. Defs.' Mot. at 6: 26-28. They argue that the fact that Fujita took Plaintiff's phone and then returned from around the corner, before placing her under arrest, broke any causal connection between Plaintiff's speech and Fujita's actions. Id. at 6:18-21. But the whole incident, including the arrest, took only a couple of minutes. SUF 122. It is undisputed that Plaintiff spoke to Fujita, asking what was happening and what his name was. SUF 20-21, 25. He asked whether she was filming him and grabbed her phone. SUF 26. Moments later, he handcuffed her and placed her under arrest. SUF 37. The charges were eventually dismissed, SUF 120, undercutting the inference that the phone seizure and arrest were motivated by some non-speech related reason. There is a triable issue concerning whether Fujita grabbed the phone and then arrested Plaintiff because she was exercising her free speech rights.

Defendants' motion for summary judgment on the Bane Act claim is DENIED.

**B. Failure to Intervene**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

An officer may be held liable for a violation of 42 U.S.C. § 1983 (Section 1983) not just by virtue of his or her own action but also for failing to intervene. Ting v. United States, 927 F.2d 1504, 1511 (9th Cir. 1991). "[W]hile state officials are generally under no constitutional duty to protect members of the public at large from harm from third parties, such a duty may arise by virtue of a special relationship between state officials and particular members of the public." Id. (internal punctuation omitted). "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or citizen." United States v. Koon, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994) aff'd in part, rev'd in part on other grounds, 518 U.S. 81 (1996). The passive defendant violates the same constitutional right as the active defendant. Id.

An officer may only be found liable, however, if he or she had a realistic opportunity to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000) as amended (Oct. 31, 2000) (finding officers who were at the scene but did not shoot were not liable for Section 1983 violation); see also Ting, 927 F.2d at 1512 (finding no liability for officers who had no previous knowledge that the defendant would harm the plaintiff and were positioned around the room away from the officer at the time of the shooting).

Defendants argue that Lopez cannot be liable for any alleged Section 1983 violation because she was unaware that Fujita was about to arrest Plaintiff and was not standing near Plaintiff at the time the arrest occurred. Defs.' Mot. at 8:1-10. All four teenagers were between Lopez and Plaintiff when Fujita started to put Plaintiff's arm behind her back. SUF 43. But Lopez was not a bystander who had no opportunity to intervene once the struggle with Fujita began. She participated physically in placing Plaintiff under arrest, SUF 109-110 – an action which Plaintiff alleges occurred without probable cause and with excessive force. Pl.'s Opp. at 12:6-9. The Fourth Amendment violation alleged by Plaintiff was not an instantaneous shooting, like those in Ting and Cunningham, but an allegedly unwarranted arrest in which force was excessive. There is a material issue of fact regarding whether Lopez could have intervened to prevent the alleged constitutional violation. Defendants' motion for summary judgment on the failure to intervene claim is DENIED.

IT IS SO ORDERED.